HARRY ABELS
v.
VICTORIA STARKEY ABELS
2007 CA 2345
Court of Appeals of Louisiana, First Circuit.
October 31, 2008
NITA R. GORRELL, Counsel for Plaintiff/Appellant/Appellee Harry Abels.
CAROLYN F. OTT, LILA TRITICO HOGAN, Denham Springs Louisiana Counsel for Defendant/Appellee/Appellant Victoria Starkey Abels.
Before PARRO KUHN PETTIGREW DOWNING and McClendon, JJ.
DOWNING, J.
The parties appeal from the trial court's judgment, which awards plaintiff/former husband, Harry Abels, a reduction in the amount of permanent spousal support he is obligated to pay to defendant/former wife, Victoria Starkey Abels, and also awards to Mrs. Abets the income tax dependency deduction for their minor child. We affirm in part, reverse in part, and render.

PERTINENT FACTS AND PROCEDURAL HISTORY
Subsequent to the parties' divorce, the trial court awarded Mrs. Abels permanent spousal support on April 11, 2005 in the amount of $950.00 per month. On September 7, 2006, Mr. Abels filed a rule to reduce the amount of spousal support. On November 17, 2006, Mrs. Abets filed a rule seeking to have the income tax dependency deduction of the parties' minor child transferred to her. After a hearing on January 25, 2007, the trial court granted both parties the requested relief In its judgment, the trial court ordered Mr. Abels to pay Mrs. Abels $750.00 per month in permanent spousal support beginning April 1, 2007, and Mrs. Abels was granted the income tax dependency deduction for their minor child.
On appeal, Mrs. Abels maintains that the trial court erred in ordering a reduction in Mr. Abets' spousal support obligation on grounds that Mr. Abels had not proven a change in circumstances and that he was voluntarily underemployed. Mr. Abels generally asserts that while the trial court correctly reduced his obligation, the amount of the reduction is insufficient, based on the relevant factors, including his and Mrs. Abels' means and circumstances; that the judgment should have been made retroactive to the date he filed his rule; and the transfer of the income tax dependency deduction to Mrs. Abels was erroneous.

DISCUSSION

Reduction in Spousal Support
A reduction in support may be granted when the payor can no longer give or the payee is no longer in need, in whole or part. La. C.C. art. 232; Gardner v. Gardner, 97-0749, p. 3 (La. App. 1st Cir. 4/8/98), 710 So.2d 1153, 1155. The payor requesting a reduction bears the burden of proof to demonstrate a significant change in the financial condition of either himself or his spouse so as to justify a reduction in the spousal support that was previously ordered. Id. An award of periodic support may be modified if the circumstances of either party materially change. La. C.C. art. 114. The trial court's determination of whether to reduce, increase, or continue the amount of spousal support should not be overturned or modified by an appellate court absent a clear abuse of discretion. Id., 97-0749 at pp. 3-4, 710 So.2d at 1155.
Mrs. Abels urges that the trial court erred in finding Mr. Abels' circumstances had materially changed so as to support the reduction in spousal support. She contends that Mr. Abels' decision to voluntarily quit his higher paying job to work at one producing less income cannot support a finding that his circumstances had materially changed and, therefore, the trial court abused its discretion in reducing his spousal support obligation.
Our review of the evidence, however, shows a reasonable factual basis for the trial court's reduction. Although Mr. Abels acknowledged that he had voluntarily resigned from his job, he explained that he had been required to work so many hours of overtime in his position that he was unable to fully exercise his every-other-weekend exercise of physical custody with his minor daughter. Additionally, there were rumors at the plant at which he worked that the employer was selling the business or shutting down the plant. Mr. Abets decided to look for employment that would allow him to work fewer hours and still make the same income. He decided to work as a truck driver for a company that advised him he would work regular weekday hours, have very little overtime requirements, and earn approximately the same income. Mr. Abets' brother, who had also been employed at the same plant before agreeing to an early retirement, worked for that trucking business. Due to an extended period of consecutive truck breakdowns, something the trucking business owner referred to as unusual, and the rising cost of fuel, Mr. Abels was not able to make the amount of money he anticipated. Thus, his actual earnings were less than that made in his prior job. The testimonial evidence supports a finding that Mr. Abels' motive in changing jobs was to have more free time to spend with his daughter and to avoid a possible layoff, not to earn less income or avoid paying spousal support. Accordingly, the trial court's implicit finding that Mr. Abels was not voluntarily underemployed was supported by the evidence and is not manifestly erroneous.
Mrs. Abels asserts that an application of the factors set forth in La. C.C. art. 112 does not warrant the reduction in spousal support from $950.00 to $750.00. And Mr. Abels complains that he demonstrated that Mrs. Abels does not need $750.00 per month in spousal support. He also urges that the trial court's monthly award of $750.00 is in excess of one-third of his net income, which is in violation of Article 112C.
The record establishes that although Mr. Abets had earned significantly less in 2006 because of the consecutive truck breakdowns, he believed that the potential to earn more money existed. In his financial affidavit, Mr. Abets acknowledges his gross monthly income of $6,198.58, which amounted to $74,382.96 annually. He testified that he paid estimated taxes of $35,360.33[1] during 2006. Thus, his monthly net income in 2006 was $3,251.89.[2] Additionally, Mr. Abels owns a camp lease, for which he pays monthly expenses, that could liquidated.
Although Mrs. Abets has been working at the same low-paying position as a clerk at a convenience store, nothing in the record establishes her earning capacity. She itemized her monthly expenses in 2007 at $2,944.02. But Mrs. Abets allows the parties' major child and her boyfriend to live in her home; and while both work, they do not pay rent or contribute financially to the household. Additionally, Mrs. Abets owns acreage that she could liquidate.
Based on our review of the evidence, in light of the factors set forth in Article 112, we cannot say the trial court's reduction in monthly spousal support from $950.00 to $750.00 was an abuse of discretion.
And insofar as Mr. Abels claims that the trial court erred by awarding an amount in excess of one-third of his net income, we conclude it lacks merit. The evidence establishes that one-third of Mr. Abels' monthly net income of $3,251.89 is $1,073.12. Thus, the award of $750 is within the parameter of Article 112C, and the trial court did not err on this basis.

Retroactivity of Reduction
Mr. Abels contends the trial court erred in failing to make the reduction in spousal support retroactive to September 7, 2006, the date he filed his rule. We agree. A judgment modifying or revoking a final spousal support award is retroactive to the date of judicial demand unless the court finds good cause was shown not to make it retroactive. See La. R.S. 9:321C. Here, the trial court made no finding of good cause. And based on our review of the record, we conclude that no reasonable basis was presented to support a finding of good cause that would have warranted not making the reduction retroactive. Accordingly, we will reverse the portion of the judgment implementing the reduction on April 1, 2007; and, we will make the order reducing Mr. Abels' spousal support retroactive to date of demand, September 7, 2006.

Income Tax Dependency Deduction
Mr. Abels complains that the trial court erred in transferring the income tax dependency deduction of their minor child to Mrs. Abels, suggesting that he would have benefited more from the deduction than his former wife. The nondomiciliary party whose child support obligation equals or exceeds fifty percent of the total child support obligation is generally entitled to claim the federal and state tax dependency deductions. See La. R.S. 9:315.18. Nothing in the record establishes that Mr. Abels, as the non-domiciliary parent, has a child support obligation that equals or exceeds fifty percent of the total child support obligation. Moreover, Mr. Abels failed to show that the right to claim the dependency deductions would substantially benefit him without significantly harming Mrs. Abels. See La. R.S. 9:315.18B(1)(b). Specifically, the accountants' testimony established that without the dependency deduction, Mrs. Abels has had to pay federal income tax; had she been able to claim her minor child as a deduction, Mrs. Abels would have received a refund. Accordingly, we find no error in the transfer of the income tax dependency deduction from Mr. Abels to Mrs. Abels.

DECREE
For these reasons, we reverse the judgment of the trial court insofar as it makes the order reducing Mr. Abels' spousal support obligation effective Apil 1, 2007, rather than from the date of demand. That decree is modified and rendered as follows:
IT IS ORDERED, ADJUDGED and DECREED that Harry Abels pay Victoria Starkey Abels spousal support in the amount of $750.00 per month retroactive to date of demand, September 7, 2006, payable in equal installments on the 1st and 15th of each month.
In all other respects, we affirm the judgment of the trial court. Appeal costs are assessed one-half to Harry Abels and one-half to Victoria Starkey Abels.
AFFIRMED IN PART; REVERSED IN PART; RENDERED
McCLENDON, J., concurs, and assigns reasons.
I disagree with the opinion to the extent that it holds the trial court found Mr. Abets not to be voluntarily under employed. To the contrary, it is more logical, based on the trial court's ruling, that the judge found Mr. Abets to be voluntarily under employed, but also believed that he should not be required to work large amounts of discretionary overtime; thus, the reduction in his spousal support obligation of $200.00 per month. Further, with regard to the income tax dependency deduction for the minor child, although I may have found differently, I cannot say that the trial court erred. However, I agree with the result reached by the majority.
PARRO, J., dissenting in part.
Louisiana Revised Statute 9:311 provides in relevant part:
A. An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a material change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
B. A judgment for past due support shall not of itself constitute a material change in circumstances of the obligor sufficient to reduce an existing award of support.
Furthermore, an award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. LSA-C.C. art. 114.
I agree with the majority's finding that a reasonable factual basis exists to support the trial court's implicit findings that Harry Abets was not voluntarily underemployed and, therefore, that he had demonstrated a material change in circumstances. However, I believe that the majority erred in attributing 100 percent of Mr. Abets' business's income to him and failing to consider any of his business's expenses in determining the amount of the reduction in spousal support to which he was entitled.[1]
Concerning the determination of one's entitlement to final spousal support, LSA-C.C. art. 112 provides in pertinent part:
A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
B. The court shall consider all relevant factors in determining the amount and duration of final support. ...
C. The sum awarded under this Article shall not exceed one-third of the obligor's net income.
Nothing in LSA-C.C. art. 112 defines "net income";[2] however, guidance can be found by examining the definition of "gross income" set forth for the calculation of child support owed by a former spouse who is self employed. According to LSA-R.S. 9:315(C)(3)(c), "gross income" means:
Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
Thus, it is appropriate to deduct the ordinary and necessary business expenses from the gross receipts of Mr. Abets' business in calculating his gross income for purposes of determining spousal support.
In his financial affidavit, Mr. Abets attested that his average gross monthly receipts[3] were $6,198.58, which amounts to $74,382.96 annually.[4] He itemized his average monthly business expenses at $4,359.90, which amounts to $52,318.80 annually.[5] Thus, Mr. Abets' gross monthly income after deduction of his ordinary and necessary business expenses was $1,838.68, which amounts to $22,064.16 annually.[6]
The documentary evidence established that during 2006, Mr. Abets' estimated monthly tax liability was $2,738.11.[7] Thus, after payment of his estimated taxes, Mr. Abets had a deficit. However, the record shows that when adjusted to more accurately reflect his actual earnings, his monthly federal tax liability on the 2006 earnings from his business was $500, and his monthly state tax liability was $150.[8] Reducing Mr. Abets' gross monthly income by those amounts leaves him with a net income of $1,188.68 per month.[9]
From that amount, he is legally obligated to pay $665 per month in child support to Mrs. Abets for their minor child, leaving him $523.58 to pay his personal expenses, which include a $304.89 premium for his medical insurance and $112.55 premium for the medical insurance for their minor child. After payment of medical insurance premiums, Mr. Abets has $106.14 per month to pay for his other personal expenses.[10]
Pursuant to his testimony and financial affidavit, Mr. Abets incurred the following monthly personal expenses: $300 for food, $67.76 for home telephone, $176.60 for a cellular phone, and $106.13 for cable/internet, $24 for the premium on his life insurance policy, $100 for clothing, $44 for uniforms, and $41.48 for his medical/dental needs. Fortunately, some of his monthly living expenses were alleviated by the fact that he resided in the home of another person who paid for the mortgage note, electricity, water, and gas.
Based on the documentary and testimonial evidence and applying the above definition of "gross income," which allows a deduction to Mr. Abets, who is self employed, for the ordinary and necessary business expenses of his trucking business, I believe that the trial court abused its discretion by making an award of spousal support to Mrs. Abets, as Mr. Abets has shown that at the time of the hearing he no longer had the ability to pay such an obligation.[11] In my opinion, the fact that he had the potential to earn more money in 2006 had he not had consecutive truck breakdowns does not change this fact. Furthermore, I question the majority's implication that Mr. Abets would be required to liquidate non-liquid assets to make him better able to provide support to Mrs, Abets. Cf. Wascom v. Wascom, 97-0547 (La. App. 1st Cir. 6/29/98), 713 So.2d 1271, 1275, writ denied, 98-2028 (La. 11/6/98), 728 So.2d 391 (involving the depletion of liquid assets by a claimant spouse). Accordingly, I would reverse that portion of the judgment awarding Mrs. Abets the monthly sum of $750.
Nonetheless, since the record contains no finding by the trial court of good cause and I find no reasonable factual basis to support a finding of good cause that would have warranted not making the reduction retroactive, I agree that any reduction in spousal support should be retroactive to the date of demand, September 7, 2006. I also agree that the trial court did not err in transferring the income tax dependency deduction from Mr. Abets to Mrs. Abets.
For the foregoing reasons, I respectfully dissent in part.
NOTES
[1] This sum includes taxes from a 401 K withdrawal, which should not be included as an income deduction.
[2] Mr. Abels' 2006 gross annual income of $74,382.96 less $35,360.33, the amount he paid during 2006 in estimated taxes, yields his annual net income of $39,022.63, which divided by twelve months yields $3,251.89.
[1] For these same reasons, I do not believe that the spousal support award of $750 was within the parameter of LSA-C.C. art. 112(C).
[2] In arriving at the net income on which it based Mr. Abets' spousal support obligation, the majority subtracted Mr. Abets' estimated tax liability from his business's gross income.
[3] Although the affidavit refers to gross monthly "income," I believe these monies are more appropriately categorized as "receipts" in the context of the facts of this case and our discussion of the applicable legal principles.
[4] Notably, there was no finding by the trial court that Mr. Abets had failed to report all of his income. In fact, this is the gross income figure that is relied on by the majority.
[5] The testimonial and documentary evidence established that during 2006, Mr. Abets paid on a monthly basis on average: $283.64 for a truck note; $1,766.64 for fuel; $1,755.99 for maintenance and repairs; and $553.63 for vehicular insurance.
[6] Mrs. Abets testified that her gross monthly income for 2006 was $1,540.
[7] In connection with his 2006 earnings, Mr. Abets paid $29,857.33 in estimated federal income taxes, or $2,488.11 per month, and $3,000 in estimated state income taxes, or $250 per month, for a combined monthly total of $2,738.11.
[8] It appears that Mr. Abets overpaid his estimated federal and state income tax liability and was entitled to a refund of the excess.
[9] Mrs. Abets testified that her net monthly pay during 2006 was $1,108.22, after deducting $147.56 for the premium for her medical insurance, as well as taxes owed.
[10] With the receipt of child support from Mr. Abets, Mrs. Abets had $1,773.22 to meet the monthly needs of herself and the minor child.
[11] Because Mr. Abets is in a situation where he no longer has the ability at this time to pay spousal support, an examination of Mrs. Abets' needs under the facts and circumstances of this case is unnecessary and, therefore, pretermitted. See BA-C.C. art. 112.